**Rhonda Renee JONES, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–05–026–CR.**

Court of Appeals of Texas,
Fort Worth.

April 20, 2006.

Rehearing Overruled May 25, 2006.

---

1. The clerk's record contains a photocopy of a photograph that is slightly blurred.

James Rasmussen, Wichita Falls, for Appellant.

Barry L. Macha, Criminal District Atty., John W. Brasher and Maureen O'Brien, Asst. Criminal District Attys., Wichita Falls, for State.

Panel B: LIVINGSTON, GARDNER, and WALKER, JJ.

## OPINION ON REHEARING

TERRIE LIVINGSTON, Justice.

### I. Introduction

After reconsidering our prior opinion on appellant Rhonda Renee Jones's motion for rehearing, we deny the motion, but we withdraw our March 2, 2006 opinion and judgment and substitute the following in their place in order to clarify parts of our original opinion.

Appellant Rhonda Renee Jones appeals her conviction and sentence of twenty-five years' confinement and a $10,000 fine for possession of 400 or more grams of methamphetamine with intent to deliver. In her first point, appellant complains that the trial court erred by failing to instruct the jury that Marcus Benner was an accomplice as a matter of law. Appellant further argues that the error was egregious and reversible because the State could not prove the quantity of the methamphetamine without Benner's testimony. In appellant's second and third points, she contends that the evidence is legally and factually insufficient to show that she possessed 400 or more grams of methamphetamine with intent to deliver. We affirm.

### II. Background Facts

On January 23, 2003, Deputy Marvin Eddy and Deputy George Goolsby, officers with the Wichita County Sheriff's Department, were dispatched to respond to a call after receiving a report that a suspicious vehicle was parked on Bohner Road, near Burkburnett, Texas, and that the car was emitting a chemical odor. When Deputies Eddy and Goolsby arrived at the scene at approximately 8:30 a.m., they saw two people and a dog sitting in a dark colored car parked in the roadway. It was later determined that appellant was the driver of the car and Benner was the passenger.

As the deputies got closer, a white substance was thrown from the passenger window, and they could smell a chemical odor typically associated with methamphetamine labs emanating from the car. After Deputy Eddy activated his patrol lights, appellant sped off and started going west on Bohner Road. Appellant then slowed down and pulled over as if she was going to stop. However, after Deputy Eddy put his patrol car in park and began to get out, appellant took off again and proceeded down the road. Deputy Eddy followed her. During the chase, several items, including coffee filters and plastic containers, were thrown from the passenger side window of appellant's car.

After appellant turned east on Thrift Road, her car began to fill with smoke. Benner then threw a container with "smoke ... billowing out" out of the window. After noticing that a Department of Public Safety trooper was coming in the opposite direction, appellant pulled the car over, and appellant and Benner got out and were arrested for evading arrest.

During appellant's trial for possession of a controlled substance with intent to deliver and evading arrest, Benner testified for the State as part of his plea bargain agreement with the State.[1] Benner testified that appellant knowingly participated in making the methamphetamine. He stated that they were making the methamphetamine for their own personal use just before the deputies arrived.

Appellant was indicted for possession of methamphetamine with intent to deliver and evading arrest or detention using a vehicle. A jury found appellant guilty of both offenses and the trial court sentenced appellant to twenty-five years in TDCJ and a $10,000 fine for possession of a controlled substance with intent to deliver

and two years in a state jail facility for evading arrest. Appellant is only appealing her conviction for the possession offense.

## III. Legal and Factual Sufficiency

Because a finding of legal insufficiency results in an affirmative judgment in appellant's favor rather than vacation of the judgment against her, a successful legal insufficiency issue would provide somewhat greater relief to appellant. *Nickerson v. State*, 69 S.W.3d 661, 668 (Tex.App.-Waco 2002, pet. ref'd). Therefore, we will address appellant's second and third points first. In points two and three, appellant contends that the evidence is legally and factually insufficient to prove that she possessed with the intent to deliver a quantity of methamphetamine in an amount of 400 grams or more.

### A. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex.Crim.App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *See Zuniga v. State*, 144 S.W.3d 477, 481 (Tex.Crim. App.2004). The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally

---

1. Benner was sentenced to three years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for his role in this case.

justified in finding guilt beyond a reasonable doubt. *Id.* at 484. There are two ways evidence may be factually insufficient: (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. *Id.* at 484–85. "This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt." *Id.* at 485. In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt. *Id.* In performing a factual sufficiency review, we are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses. *Id.* at 481; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We may not substitute our judgment for the fact finder's. *Zuniga,* 144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence. *Id.* at 484, 486–87. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

## B. Applicable Facts

At trial, Benner testified that he and appellant were making methamphetamine, that both he and appellant bought the chemicals used in making the drug, and that appellant was going to use the drug. He stated that they were about three-fourths of the way through the process of making the methamphetamine when the sheriff's car pulled up behind them. Benner stated that the methamphetamine, which was in a liquid form, was in a clear glass container that was approximately eight inches tall and four or five inches in diameter. He testified that the glass was filled with liquid methamphetamine to within about two inches from the top. Benner stated that during the police chase, he poured the liquid methamphetamine into a bleach bottle[2] in an effort to destroy the evidence. He testified that the bleach was not used as part of the manufacturing process. He said that if the methamphetamine had "powdered out," it would have yielded seven to ten grams of methamphetamine.

Michelle O'Neal, a senior forensic chemist with the Tarrant County Medical Examiner's Office, testified that she received three bottles containing a liquid from the Wichita Falls Police Department (WFPD), and tested the liquid. She stated that the liquid was in two layers when she received it, but that the WFPD only asked her to identify the top layer of liquid. O'Neal weighed the contents of the bleach bottle and recorded that it weighed 2,375.8 grams. She also took a sample of the top layer of liquid and documented that it contained methamphetamine. O'Neal never attempted to identify the liquid on the bottom layer.

O'Neal testified that she took the dimensions of the glass container described by Benner and calculated that it would yield 1,234.6 grams of liquid methamphetamine if it was suspended in water and was six inches tall and four inches in diameter.

---

**2.** At trial, Benner identified the contents of the bottle as bleach. However, the State provided no expert testimony on the bottle's contents.

Additionally, O'Neal stated that the liquid is no longer in two phases because the top layer, the methamphetamine, evaporated quickly and that only the bottom layer remains.[3]

Max Courtney, a laboratory director and owner of Forensic Consultant Service in Fort Worth, testified for the defense that he obtained a sample of the bleach container on August 19, 2004. He stated he went to the Wichita County District Attorney's Office and examined three bottles of liquid and took a combined sample of 383 grams. Courtney said that he was under the belief that all three samples were from the same container. He testified that he performed three different tests on the samples and identified the liquid in them as bleach. The liquid was only in one phase when Courtney received it because the liquid methamphetamine had evaporated before Courtney tested the bleach bottle contents. He further stated that he did not find any controlled substances, but did find two products, namely acetylated methamphetamine and N-formylmethamphetamine, in trace quantities that were consistent with oxidation products of methamphetamine.

Courtney said that it is possible for liquid methamphetamine to oxidate within eighteen months if it was suspended in bleach, as happened in this case. He opined that if liquid methamphetamine was poured into bleach, there would be some oxidation and degradation of the methamphetamine. Courtney testified that the two liquids would not mix well together and that they would most likely be seen as two phases of liquid.

He estimated that the total amount of liquid methamphetamine that was poured into the bleach container was 146 grams. He stated that he arrived at that estimation because O'Neal recorded that there was 250 milliliters in the top layer. He further stated that of those 146 grams, most of the liquid would be mineral spirits and although mineral spirits are used in the processing of methamphetamine, he did not consider them an adulterant or dilutant.[4] Additionally, Courtney testified that he did not consider liquid methamphetamine to be methamphetamine because most of it is a solvent and the solvent is not used to increase the bulk of the product. He also stated that bleach is not an adulterant or dilutant because it is a different layer than the controlled substance.

Appellant testified that on January 23, she and Benner were going to Electra, Texas to do Benner's laundry and to check on her lake house. She conceded that she was driving the car. Appellant stated that she stopped the car on the corner of Bonner Road and Gentry because she and Benner began arguing, Benner "aggressively grabbed" her shirt, and she was attempting to calm him down.

Appellant said that when she saw the sheriff's car, she continued driving because she had been a victim of police abuse and she was still traumatized by the abuse.[5] She stated that she was driving to a more populated area before she pulled over. During the chase, appellant stated Benner was throwing items out of the window, but that she did not throw anything out of her window. She stated that she told Benner to stop throwing things because "[the po-

---

3. The State did not introduce any of the methamphetamine at trial because it had evaporated.

4. Courtney did not record the aggregate weight of the liquid.

5. Appellant testified that she was physically abused by police officers in Burkburnett, Texas and Electra, Texas on two separate occasions and that she settled in both cases.

lice] are going to think the worst." Appellant testified that she did not know why Benner was throwing things out of the window and denied buying any of the discarded items. Appellant could not remember smelling a chemical odor in the car or if the car filled up with smoke during the chase. She testified that she did not know that Benner had methamphetamine with him and she did not see the items used in making the drugs in the car. Appellant denied participating in the manufacturing of methamphetamine and denied that the methamphetamine was for her personal use.

## C. Applicable Law

To convict a defendant for possession of a controlled substance, the State must show that the defendant knowingly or intentionally possessed the controlled substance. *Seals v. State,* 187 S.W.3d 417, 419 (Tex.Crim.App. 2005). A controlled substance is defined as "a substance, including a drug, an adulterant, and a dilutant, listed in Schedule I through V or Penalty Groups 1, 1–A, or 2 through 4." *Id.* (citing TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon Supp.2005)); *see also Chapman v. United States,* 500 U.S. 453, 460, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991). A controlled substance includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance. *Seals,* 187 S.W.3d at 419; *see also Chapman,* 500 U.S. at 460, 111 S.Ct. at 1925.

Section 481.002(49) of the Texas Health and Safety Code defines adulterant or dilutant as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49).

## D. Analysis

The court of criminal appeals has recently addressed what substances are included in the definition of adulterant or dilutant. *See Seals,* 187 S.W.3d at 419–20. In *Seals,* the defendant was found guilty of possession of methamphetamine in an amount more than one gram but less than four grams. *Id.* at 418. On appeal, the defendant contended that the blood waste found in a vial was not an adulterant or dilutant and therefore should not have been included in the weight of the controlled substance.[6] *Id.* The Dallas Court of Appeals reversed the defendant's conviction and held as a matter of logic that not every substance can be an adulterant or dilutant, and the State sought discretionary review. *Id.*

The court of criminal appeals examined section 481.002(49) of the health and safety code and compared it to the court's prior holding in *Cawthon v. State,* 849 S.W.2d 346, 348–49 (Tex.Crim.App.1992). *Seals,* 187 S.W.3d at 421. In *Cawthon,* the court of criminal appeals held that to include an adulterant or dilutant in the aggregate weight of a controlled substance, the State must prove four elements: (1) the identity of the named illegal substance, (2) that the added remainder (adulterants or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product, and (4) the weight of the illegal substance, including any adulterants or dilutants. *Cawthon,* 849 S.W.2d at 348–49.

---

6. At his trial, the defendant stated that "the vial was used to squirt blood and trace amounts of methamphetamine when he was unable to successfully inject the drug into his arm." *Id.*

In *Seals*, the court of criminal appeals noted that when the legislature added the definitions of adulterants and dilutants to the health and safety code in 1994, the legislature left out the requirement that the State must prove an intent to increase the bulk or quantity of the controlled substance and eliminated the second element in *Cawthon* by including, "regardless of its effect on the chemical activity." *Seals*, 187 S.W.3d at 420. The court stated that "[t]he literal meaning of the legislature's adulterant and dilutant definition is that *any substance that is added to or mixed with* a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant." [7] *Id.* at 419 (emphasis added).

The court observed that under the rules of statutory construction, we must presume "that the legislature meant what it said" even if applying the literal meaning of the statute produces absurd results, results that the legislature must have intended. *Id.* The court noted that "[i]t may lead to instances, similar to [the defendant's], where the weight of a substance that is not intentionally added to increase the bulk or quantity of a controlled substance is nevertheless used to increase a defendant's pen-

alty." [8] *Id.* Thus, the court of criminal appeals concluded that the revised statute required the blood to be included within the definition of adulterant or dilutant. *Id.* at 421.

 Here, Benner testified that he poured the liquid methamphetamine in to the bleach bottle. Additionally, O'Neal stated that she weighed the contents of the bleach bottle and that it contained 2,375.8 grams. She also stated that she tested the top layer of the liquid and that it contained methamphetamine. According to the holding in *Seals*, we must include the weight of an adulterant or dilutant—i.e., the bleach—to the aggregate weight of the controlled substance regardless of whether the bleach was used or intended to increase the bulk of the controlled substance.[9] *Seals*, 187 S.W.3d at 419. There was no direct evidence presented at trial regarding whether the liquid methamphetamine and bleach ever mixed; however, there was direct testimony that one of the liquids was poured directly into the same container holding the other liquid. It can be reasonably inferred that the two liquids mixed when the liquid methamphetamine was initially poured into the bleach. The

7. The dissent states that the bleach was not added to the methamphetamine. *See* Diss. Op. at 293. However, Benner testified that he poured the *liquid* methamphetamine into the bleach bottle, both obviously in a liquid state at the time they were mixed.

8. The dissent analogizes the pouring of liquid methamphetamine into bleach with the pouring of liquid methamphetamine into a bottle of rocks. The dissent ignores the fact that the bleach was in a liquid state at the time it was originally mixed with the liquid methamphetamine. *See* Diss. Op. at 292–93. However, we are in no way saying that a mixture of a solid and a liquid is the same thing as a mixture of two liquids.

9. Appellant relies on our decision in *Brumit v. State*, as support for her position that there is

not sufficient proof to establish the quantity of methamphetamine produced. 42 S.W.3d 201, 204 (Tex.App.-Fort Worth 2001, pet. ref'd). In *Brumit*, we held that the State cannot prove the quantity of a controlled substance by giving an expert witness the dimensions of a container in which the controlled substance was located. *Id* at 203–04. However, the *Seals* decision holds that we are to consider the combined weight of the adulterant or dilutant and the controlled substance in determining the aggregate weight. *Seals*, 187 S.W.3d at 419. Because the State included the weight of the bleach and the weight of the liquid methamphetamine in calculating the aggregate weight, our decision in *Brumit* is not controlling.

trier of fact may make reasonable inferences regarding the evidence. *See Tucker v. State,* 183 S.W.3d 501, 509 (Tex.App.-Fort Worth 2005, no pet.) (stating that the trier of fact can draw reasonable inferences from basic facts to ultimate facts); *King v. State,* 174 S.W.3d 796, 802 (Tex. App.-Corpus Christi 2005, pet. ref'd) (holding jury's responsibilities include drawing reasonable inferences from basic facts). The fact that the two liquids had separated at the time of trial is irrelevant.[10] Additionally, O'Neal's calculation that the bleach bottle contained 2,375.8 grams of liquid is clearly above 400 grams and therefore is legally and factually sufficient to support the jury's finding that appellant possessed 400 grams or more of methamphetamine. Although we can think of instances in which the statutory construction set out in *Seals* might lead to an absurd result, such as when a small amount of a controlled substance is poured into a large amount of substance for reasons other than manufacturing and the defendant is charged for the combined weight, we agree with the court of criminal appeals that it is not our place within the judiciary to construe a statute based on our notions of logic or what makes common sense.[11] *Id.* at 421.

■■■ Additionally, appellant argues that there is no evidence in the record that she intended to deliver any methamphet-

amine. Intent to deliver can be proven by circumstantial evidence. *See Jordan v. State,* 139 S.W.3d 723, 726 (Tex.App.-Fort Worth 2004, no pet.); *Rhodes v. State,* 913 S.W.2d 242, 251 (Tex.App.-Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex.Crim. App.), *cert. denied,* 522 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997); *Williams v. State,* 902 S.W.2d 505, 507 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *Reece v. State,* 878 S.W.2d 320, 325 (Tex.App.-Houston [1st Dist.] 1994, no pet.). Courts have considered several factors in determining intent, including: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. *Jordan,* 139 S.W.3d at 727; *Williams,* 902 S.W.2d at 507; *Reece,* 878 S.W.2d at 325. Expert testimony may be introduced to prove intent to deliver. *See Bryant v. State,* 997 S.W.2d 673, 675 (Tex.App.-Texarkana 1999, no pet.); *Rhodes,* 913 S.W.2d at 251; *Mack v. State,* 859 S.W.2d 526, 529 (Tex.App.-Houston [1st Dist.] 1993, no pet.); *Branch v. State,* 833 S.W.2d 242, 244–45 (Tex.App.-Dallas 1992, pet. ref'd).

Here, appellant was arrested in a rural area outside of Burkburnett, Texas on a

---

**10.** The dissent focuses its argument on Courtney's testimony that the bleach and methamphetamine would not "mix well." However, Courtney did not testify that the two liquids did *not* mix. Additionally, O'Neal did not testify when the methamphetamine would "float" on the bleach.

**11.** The dissent seems to base its reasoning on the fact that the bleach and methamphetamine ultimately separated into two distinct layers at some point after the methamphetamine was mixed with the bleach. The dissent concludes that the "two did not com-

bine;" however, there is no evidence stating they never combined. Thus, we cannot determine from the record when the methamphetamine and bleach actually separated. Because the statute is unambiguous, we cannot say that the legislature intended different results when the person pours a controlled substance into a liquid and the two products combine and when the person pours a controlled substance into a liquid and the two products separate. It is not this court's place to construe this statute to our own personal ideas of what seems logical.

county road. Appellant conceded that she was the driver of the car. During the police chase, Benner testified that he threw items out of the window and that he was attempting to get rid of the evidence. After appellant and Benner had been arrested, the officers went back to find the items that were discarded and determined that these items, such as coffee filters, plastic containers, and a gassing generator, are typically used in the manufacture of methamphetamine. Appellant did not possess any paraphernalia indicating an intent to use the drug. Benner testified that if the liquid methamphetamine had "powdered out" it would have yielded seven to ten grams of methamphetamine. Officer Daniel Zimpel, a Wichita Falls police officer, testified that a "cook" of seven to ten grams is a fairly small amount, but that it could be "cut" to approximately eighteen grams and sold. Bobby Dilbeck, a Wichita Falls police officer, testified that the typical amount of methamphetamine could be between one fifth and one quarter of methamphetamine. Therefore, the eighteen grams could provide as many as ninety grams of methamphetamine. Dilbeck further testified that when he arrived at the scene, he found salt where the car was reported to have been parked, as well as other items that are associated with a methamphetamine lab. Additionally, appellant and Benner were both unemployed at the time of the offense. Thus, an inference can be drawn that the methamphetamine being manufactured was not for personal use.

We hold that the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that appellant intended to deliver the methamphetamine. Therefore, we overrule appellant's second point. Additionally, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt. We overrule appellant's third point.

## IV. Accomplice Witness Instruction

In appellant's first point, she contends that the trial court erred by failing to include an accomplice witness instruction in the guilt-innocence charge because Benner was an accomplice as a matter of law. Appellant argues that without Benner's testimony, the State could not prove the quantity of the methamphetamine and that the error was egregious and reversible. Appellant concedes that she did not request an accomplice witness instruction at trial.

### A. Error Analysis

Article 38.14 of the code of criminal of procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX.CODE CRIM. PROC. ANN art. 38.14 (Vernon 2005).

In reviewing a trial court's failure to instruct the jury on the accomplice witness rule, we examine the record for evidence corroborating the accomplice witness testimony. *Hall v. State*, 161 S.W.3d 142, 149 (Tex.App.-Texarkana 2005, pet. ref'd). If the evidence clearly warrants conviction independent of the accomplice testimony, the trial court's failure to instruct on the law of accomplice testimony is not reversible error. *Solis v. State*, 792 S.W.2d 95, 98 (Tex.Crim.App.1990); *Hall*, 161 S.W.3d at 149.

A person may not be convicted on the testimony of an accomplice unless there is other evidence tending to connect

the defendant with the crime. Tex.Code Crim. Proc. Ann. art. 38.14; *Hall,* 161 S.W.3d at 149. The test is whether, after excluding the accomplice's testimony, there is other evidence of an incriminating character which tends to connect the defendant with the commission of the offense. *Burks v. State,* 876 S.W.2d 877, 887 (Tex.Crim.App.1994); *Munoz v. State,* 853 S.W.2d 558, 559 (Tex.Crim.App.1993); *Hall,* 161 S.W.3d at 149.

 The State concedes that Benner was an accomplice witness as a matter of law.[12] When there exists no doubt that a witness is an accomplice, the trial court is under a duty to so instruct the jury even if no such instruction is requested. *De-Blanc v. State,* 799 S.W.2d 701, 709 (Tex. Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991). Therefore, we conclude that the trial court erred by not including an accomplice witness instruction in the jury charge.

## B. Harm Analysis

 Next, we must consider whether the error was harmful. *See Herron v. State,* 86 S.W.3d 621, 631 (Tex.Crim.App. 2002). Because appellant did not object to the omission of the instruction, we must decide whether the error was so egregious and created such harm that appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred.

*Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g).

### 1. Standard of Review

 Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron,* 86 S.W.3d at 632 (citing *Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991)). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex. Crim.App.1996).

### 2. Law and Analysis

 The court of criminal appeals has stated that the accomplice witness instruction merely informs the jury that it cannot use the accomplice witness testimony unless there is also some non-accomplice evidence connecting the defendant to the offense. *Herron,* 86 S.W.3d at 632. Non-accomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose an accomplice witness instruction is designed to serve. *Id.; Hall,* 161 S.W.3d at 149. An accomplice witness instruction should be flexible, taking into account the existence and strength of any non-accomplice testimony and the applicable standard of harm. *Herron,* 86 S.W.3d at 632.

---

12. In order to be an accomplice as a matter of law, the person must be susceptible to prosecution for the offense with which the accused is charged or a lesser included offense. *See Medina v. State,* 7 S.W.3d 633, 641 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000); *McFarland v. State,* 928 S.W.2d 482, 514 (Tex.Crim.App.1996); *Ex parte Zepeda,* 819 S.W.2d 874, 876 (Tex.Crim.App.1991); *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex. Crim.App.1986), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989). A co-indictee for the same offense is an accomplice as a matter of law. *Burns v. State,* 703 S.W.2d 649, 651 (Tex.Crim.App.1985). This includes a witness who is indicted for the same offense, but is promised immunity if he testifies against the accused. *Blake v. State,* 971 S.W.2d 451, 462 (Tex.Crim.App.1998) (Mansfield, J., dissenting) (citing *Stiles v. State,* 89 Tex.Crim. 603, 232 S.W. 805 (1921)).

To determine the sufficiency of the corroboration, regardless of whether an objection was made, we eliminate the testimony of the accomplice witness and examine the testimony of the other witnesses. *See Taylor v. State,* 7 S.W.3d 732, 737 (Tex. App.-Houston [14th] Dist.1999, no pet.). In determining the strength of the particular item of non-accomplice evidence, we must examine (1) its reliability or believability, and (2) the strength of its tendency to connect the defendant to the crime. *Id.; see also Hall,* 161 S.W.3d at 150. A harmless error analysis for the omission of the accomplice witness instruction should also be flexible, taking into account the existence and the strength of any non-accomplice evidence and the applicable standard of harm. *Hall,* 161 S.W.3d at 149–50.

### a. Quantity Element

Appellant first complains that Benner's testimony regarding the existence and weight of the methamphetamine is uncorroborated and that the State could not have proved these facts without Benner's testimony. As stated above, the court of criminal appeals addressed the issue of what substances qualify as an adulterant or dilutant. *Seals,* 187 S.W.3d at 419–20. The court held that we must consider the weight of any substance, whether or not used in the manufacturing of the controlled substance, in determining the aggregate weight of the controlled substance. *Id.* at 421.[13] O'Neal testified that she performed a test on the bleach bottle and recorded that it weighed 2,375.8 grams and that it contained methamphetamine. Thus, non-accomplice evidence sufficiently corroborates Benner's testimony that he poured the liquid methamphetamine into the bleach bottle, and the trial court's failure to include an accomplice witness instruction is harmless as to this evidence.

### b. Party to the Offense

■ Appellant further complains that the jury should have been instructed on accomplice witness law because Benner provided the only direct evidence that she was a party to the offense. Appellant concedes that she was driving the car when Benner threw the items out the window, but contends that she was not manufacturing methamphetamine. While the accused's mere presence at the scene of the crime is insufficient, by itself, to corroborate accomplice witness testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. *Trevino v. State,* 991 S.W.2d 849, 851–52 (Tex. Crim.App.1999); *Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex.Crim.App.1996). The State argues that even though appellant's presence at the scene is not enough, there was evidence to connect her to the manufacturing of methamphetamine. The State contends that the fact that appellant was the driver of the car where the manufacturing was taking place, a chemical odor was emitting from the car, and the car was positioned so that the passengers could observe traffic in two directions all connect appellant to the manufacturing of the drugs.

Deputy Eddy testified that when he pulled up behind appellant's car, a white substance was thrown out of the passenger

---

13. Appellant contends that the weight of the bleach cannot be included in the aggregate weight of the methamphetamine. However, in *Seals,* the court of criminal appeals did not hold that the adulterant or dilutant and the controlled substance had to mix. Therefore, we decline to hold that when a controlled substance is mixed with an adulterant or dilutant and they form two distinct phases, the adulterant or dilutant is not included in the aggregate weight.

window and the car sped off. He also stated that he could smell a strong chemical odor that is typically associated with methamphetamine labs. Deputy Eddy said that during the chase, Benner began throwing items out the window at random intervals. Deputy Eddy opined that the driver was fleeing because she was avoiding detention. Additionally, Deputy Goolsby testified that he could also smell a chemical odor and that appellant's car filled up with smoke during the police chase.

Based on these facts, we hold that there was sufficient evidence to corroborate appellant's participation in the crime. The statements by Deputies Eddy and Goolsby corroborate the fact that appellant was at the scene where the methamphetamine was being manufactured, appellant was the driver of the vehicle, and appellant fled the scene. For these, reasons we hold that the trial court's omission of the accomplice witness instruction was harmless. We overrule appellant's first point.

### V. Conclusion

Having overruled appellant's three points, we affirm the trial court's judgment.

WALKER, J. filed a dissenting opinion.

SUE WALKER, Justice, dissenting.

I respectfully dissent. Because no evidence exists in the record that would permit a jury to rationally find that appellant possessed an amount of 400 or more grams of methamphetamine, I would hold that the State failed to prove an essential element of the offense. I would therefore hold that the evidence is legally insuffi-cient to support the conviction. Accordingly, I would sustain appellant's second issue, reverse the trial court's judgment, and render a judgment of acquittal.

I agree with the majority's recitation of the law regarding what constitutes an adulterant or dilutant, but I cannot agree with the majority's holding that a layer of bleach that is separate and distinct from a layer of methamphetamine constitutes an adulterant or dilutant. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (Vernon Supp.2005); *Seals v. State,*187 S.W.3d 417, 419-21 (Tex.Crim.App. 2005). Section 481.002(49) of the health and safety code defines an adulterant or dilutant as "any material that *increases the bulk or quanti-ty* of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (emphasis added). The court of criminal appeals recently interpreted this definition to mean that "any substance that is added or mixed with a controlled substance ... may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." *Seals,* 187 S.W.3d at 419.

Here, the State's expert, Michelle O'Neal, testified that when she received the liquid for testing, it was in two distinct layers and that she only tested the top layer, which she identified as methamphetamine. She then weighed the entire contents of the bleach bottle and discovered that it weighed 2,375.8 grams. The defense expert testified that he tested only the bottom layer and found that it was bleach.[1] The State used O'Neal's testimony about the total weight of the bleach and liquid methamphetamine to attempt to es-

---

1. The defense expert did not test the top layer because it had already evaporated at the time that he tested the substance. Using the calculation given to him by O'Neal—although O'Neal did not testify to the weight or volume of the top layer at trial—that there was 250 milliliters of the top layer, the defense expert calculated the total amount of liquid methamphetamine in the container to be less than 146 grams.

tablish that appellant possessed 400 or more grams of methamphetamine. But the layer of bleach that lined the bottom of the bleach bottle was separate and distinct from the layer of liquid methamphetamine; the two did not combine.[2] Thus, the bleach was not "added to or mixed with" the methamphetamine and did not "increase the bulk or quantity" of the methamphetamine just as a layer of rocks in the bottom of the bottle would not increase the bulk or quantity of the methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(49); *Seals,* 187 S.W.3d at 419. Surely, if the bottle had contained rocks instead of bleach, the majority would not hold that the rocks were adulterants or dilutants to be included in the total weight of the methamphetamine.[3]

I would hold that the State failed to put forth any evidence that the weight of the top layer—that which contained the methamphetamine—was 400 grams or greater. Therefore, I would hold that the evidence is legally insufficient to prove that Appellant possessed 400 or more grams of methamphetamine. For the reasons set forth above, I dissent.

---

**2.** Contrary to the majority's position, the jury could not infer from the fact that the methamphetamine was poured into the bleach that the two liquids "mixed." The direct evidence from both the State's expert and the defense expert was to the contrary. O'Neal testified that she did not know the underlying substance was bleach, but said that because methamphetamine had a lower pH than the substance constituting the bottom layer (which we know was bleach) the methamphetamine would "float" on top of the bottom liquid. Max Courtney, the defense expert, testified that when liquid methamphetamine is poured into bleach "[t]he two substances are not going to mix well, so it's like gasoline and water." Two substances that do not combine to form a single substance, but instead retain their separate character in two distinct layers cannot be inferred to have "mixed."

**3.** The majority relies on the court of criminal appeals recent holding in *Seals* that blood found in a vial mixed with methamphetamine could be considered an adulterant or dilutant, but I would distinguish *Seals* because the blood and methamphetamine in that case were intermixed with each other, unlike in the present case. *See Seals,* 187 S.W.3d at 421.