

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00196-CR

BRYAN JEREMIAH WILLIAMS                                            APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

### MEMORANDUM OPINION[1]

----------

Appellant Bryan Jeremiah Williams appeals his conviction for possessing between four grams and two hundred grams of cocaine while intending to deliver it.[2] In two issues, he contends that the evidence is insufficient to prove his intent

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .112(a), (d) (West 2010).

to deliver the cocaine and that the trial court erred by admitting evidence about ammunition and a stolen gun.  We affirm.

**Background Facts**

One day in June 2010, the Gainesville Police Department (GPD) simultaneously executed thirteen search warrants at the homes of individuals suspected of selling cocaine.  GPD Investigator Tim Green joined with a group of officers who executed a no-knock search warrant at 812 Buck Street, where appellant lived.[3]  After executing the warrant and after securing the scene, Investigator Green found appellant standing under a carport.  Close to appellant, Investigator Green found $10,593 in cash along with appellant's driver's license and his debit card.  These items had been removed from appellant's pockets by another officer.

Appellant eventually offered to show Investigator Green "the stuff [the officers] were looking for."  Appellant led Investigator Green to a bedroom where Investigator Green found a "pretty good size chunk of crack cocaine."  The cocaine weighed 17.74 grams, which, according to Investigator Green, was among the larger amounts of cocaine that had been found in Cooke County.  In appellant's house, Investigator Green also recovered a stolen handgun, ammunition, a razor blade containing white residue, digital scales, and a letter to

---

[3]Prior to June 2010, there had been a high amount of foot traffic and car traffic at 812 Buck Street.  Some of the people who had visited the home were known to be involved with illegal drugs.

2

appellant from someone who was incarcerated for a drug-related offense. Appellant later admitted that the cocaine belonged to him and said that he had intended to use it.[4]

A Cooke County grand jury indicted appellant for possessing the cocaine while intending to deliver it. Appellant pled not guilty. After the parties filed various pretrial documents and presented their cases,[5] the jury found appellant guilty. The jury heard evidence concerning appellant's punishment and assessed fifteen years' confinement. The trial court sentenced him accordingly. This appeal followed.

### Evidentiary Sufficiency

In his first issue, appellant contends that the evidence is insufficient to sustain the jury's verdict that he intended to deliver the cocaine. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

---

[4]Appellant also conceded in his brief that he possessed the cocaine. Along with the cocaine, the police found a small amount of marijuana in an automobile at the home.

[5]Although appellant did not testify at trial, the jury heard his version of the facts (that he possessed the cocaine but did not intend to deliver it) through the admission of testimony that he had previously given.

3

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

"In a possession with intent to deliver case, the State must prove that the defendant: (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another;

4

and (3) knew that the substance in his possession was a controlled substance." *Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see* Tex. Health & Safety Code Ann. § 481.112(a).  Appellant argues only that the evidence was insufficient to establish his intent to deliver.

Intent to deliver may be established through circumstantial evidence.  *See Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.).  Furthermore, "intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the accused."  *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).  Testimony by experienced law enforcement officers may be used to establish a defendant's intent to deliver.  *Robinson v. State*, 174 S.W.3d 320, 331 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).  We may consider several factors in determining such intent, including the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia (for use or sale), whether the defendant possessed a large amount of cash in addition to the drugs, and the defendant's status as a drug user.  *Jones v. State*, 195 S.W.3d 279, 288 (Tex. App.—Fort Worth 2006) (op. on reh'g), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007); *Jordan*, 139 S.W.3d at 726.  "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense."  *Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (op. on reh'g).

Appellant argues that the location where the officers found the cocaine, his home, is not in a high drug traffic area. It is true that the evidence did not reveal that any particular successful drug purchase had occurred at appellant's home. However, Investigator Green testified that during surveillance of the home, he witnessed people known to be involved in the drug culture coming and going from the house. Furthermore, Yusef Stevenson, a man known to Investigator Green through previous narcotics investigations, was found inside of the house upon the execution of the warrant.[6] Thus, the jury could have reasonably inferred from the evidence that appellant's home was associated with the delivery of drugs and that this factor weighed in favor of a finding of appellant's intent to deliver.

Appellant next contends that the quantity of crack cocaine found in his home is consistent with personal use rather than delivery. But Investigator Green testified that the quantity of cocaine found in appellant's home, 17.74 grams, is consistent with dealing rather than using. Investigator Green explained that most crack cocaine users use any drugs in their possession almost immediately and are not typically found with a large amount of cocaine. Moreover, the evidence established that the amount of appellant's cocaine was worth at least $1,700 and that cocaine is typically sold in .2 or .3 gram portions worth $20. Based on this evidence, the jury could have reasonably determined

---

[6]Appellant's mother was also in the home.

6

that appellant's possessing 17.74 grams of cocaine was inconsistent with personal use. *See Rhodes v. State*, 913 S.W.2d 242, 250–51 (Tex. App.—Fort Worth 1995) (finding that evidence was sufficient to establish a defendant's intent to deliver 2.09 grams of crack cocaine), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894 (1997); *see also Mack v. State*, 859 S.W.2d 526, 528–30 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (holding that 8.9 grams of crack cocaine was consistent with a defendant's intent to distribute).

Appellant also argues that the evidence does not indicate intent to deliver because the crack cocaine was found in a solid chunk in one bag and no small baggies, which are frequently used for distribution, were found in his home. Appellant claims that this lack of evidence emphasizes that his cocaine was for personal use. But although the police did not find small plastic bags, they did find, in various parts of the house, a razor blade, a stolen handgun, ammunition, and two sets of digital scales with a three pound limit. Investigator Green testified that drug dealers frequently use digital scales to measure drug quantities and that scales of the size found in appellant's home indicate that they were used to measure higher quantities than that of a typical drug user. Also, the jury heard that drug dealers tend to use knives or razor blades to cut the large cookie of cocaine into smaller pieces for individual sale. Furthermore, Investigator Green testified that drug dealers usually keep a firearm "to protect their interest[s]" and that those handguns are frequently stolen by drug users and exchanged with dealers for drugs. *See Leadon v. State*, No. 02-08-00163-CR, 2009 WL

7

1815663, at *3 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op., not designated for publication) (considering a gun found in the defendant's home with drugs as evidence of the defendant's intent to distribute).[7]

Although the police did not find plastic baggies, the record does not establish that they found evidence that appellant is a drug user, such as a pipe. *See Jordan*, 139 S.W.3d at 726–27 (holding that although the police found no evidence that the defendant intended to distribute drugs, they also found no evidence indicating an intent to use the drugs, and the jury could therefore reasonably find an intent to distribute). Based on the other evidence presented, the jury could have reasonably found that appellant intended to distribute his cocaine despite the fact that no small baggies were found in his home. *See Brown v. State*, No. 02-04-00564-CR, 2006 WL 412466, at *3 (Tex. App.—Fort Worth Feb. 23, 2006, no pet.) (mem. op., not designated for publication) (holding similarly).

---

[7]In his brief, appellant relies on a federal case in which the Fifth Circuit held that the evidence was insufficient to prove the defendant's intent to deliver drugs because, in part, the gun that an officer had found was not physically close to the drugs. *See United States v. Hunt*, 129 F.3d 739, 743 (5th Cir. 1997). Like in *Hunt*, the gun and ammunition in this case were not close to the drugs. But in this case, unlike in *Hunt*, the State presented evidence of a large amount of cash and of the presence of scales. *Id.* at 744. Also, the weight of the drugs at issue in *Hunt* was less than half of the weight in this case. *Id.* at 741. Finally, there is no indication from the opinion in *Hunt* that the gun involved in that case was stolen, and the evidence in this case established that the gun was stolen and that drug dealers often receive stolen guns in exchange for delivering drugs.

8

Next, appellant argues that he has a legitimate explanation for the large amount of cash seized by the police. During the search of appellant's home, the police recovered $10,593. Appellant claims that he received $7,000 for a car that his mother had previously purchased for $150. He also asserts that the remaining $3,593 was given to him by the mother of his children to buy a music studio. Investigator Green testified that drug dealers tend to keep large sums of cash to make transactions. Investigator Green also testified that drug dealers typically keep the cash on their person, rather than hidden elsewhere, to prevent theft. Finally, Investigator Green testified that "rocks" of cocaine, weighing .2 to .3 grams are typically sold for $20 apiece. The cash that appellant possessed contained many $20 bills. Based on Investigator Green's testimony, the jury could have reasonably concluded that appellant possessed a large amount of cash because of his position as a drug dealer instead of other reasons.

Finally, Investigator Green testified that his investigation prior to the execution of the search warrant provided evidence of appellant's involvement in the delivery of cocaine. Specifically, appellant had driven a car from which another person had exited with the purpose of delivering cocaine.

Viewing the evidence in the light most favorable to the jury's verdict and presuming that the jury resolved any conflicting inferences from the evidence in favor of the verdict, we conclude that a rational jury could have determined beyond a reasonable doubt that appellant intended to deliver the cocaine. *See*

9

Tex. Health & Safety Code Ann. § 481.112(a); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. We overrule appellant's first issue.

## Preservation of Error

In his second issue, appellant argues that the trial court erred by admitting the stolen gun and ammunition that the police found in his home. Appellant contends that the gun and ammunition were more prejudicial than probative. *See* Tex. R. Evid. 403. The State contends that appellant forfeited his complaint about the admission of the evidence. We agree with the State.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g). Preservation of error is a systemic requirement. *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007).

The purpose of requiring a timely objection is to give the trial court or the opposing party the opportunity to correct the error or remove the basis for the

10

objection. *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000). If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited. *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008), *cert. denied*, 130 S. Ct. 72 (2009).

In *Ratliff v. State*, Ratliff was convicted of possession of less than one gram of methamphetamine. 320 S.W.3d 857, 858 (Tex. App.—Fort Worth 2010, pet. ref'd). The police arrested Ratliff for possessing two marijuana cigarettes and then, upon searching the car he had been in, the police discovered methamphetamine among other drug paraphernalia. *Id.* at 859. Ratliff argued that the trial court erred by admitting the physical evidence that was obtained from the car. *Id.* at 860. Ratliff filed a motion to suppress but did not obtain a pretrial hearing or ruling on the motion. *Id.* at 861. Furthermore, he allowed a police officer to answer several questions regarding the evidence confiscated from the car before objecting to the admission of the physical evidence itself. *Id.* We held that Ratliff's failure to object to the officer's testimony describing the evidence from the car forfeited any error associated with his objection to the State's later introduction of the evidence. *Id.* at 862; *see Turner v. State*, 642 S.W.2d 216, 217 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (concluding that a defendant forfeited his argument by waiting to object to the admission of evidence until after a police officer extensively testified about the evidence).

11

Investigator Green answered several questions regarding the stolen handgun before appellant objected. When asked what he found in appellant's house, Investigator Green stated, without objection, that he found a .380 caliber handgun and .380 caliber ammunition. Investigator Green then identified State's Exhibit 2, a map of the layout of appellant's house, which included a photograph of the handgun labeled as "STOLEN .380 CALIBER HANDGUN" and a photograph of the ammunition labeled as ".380 CALIBER AMMUNITION." Appellant did not object to the admission of State's Exhibit 2. Later in his testimony, Investigator Green discussed, without an objection under Texas Rule of Evidence 403, State's Exhibit 7, another photograph of the box of ammunition, and State's Exhibit 11, another photograph of the handgun.

Eventually, appellant objected that testimony about the gun and ammunition was more prejudicial than probative and that the actual admission of the gun and ammunition was more prejudicial than probative. But at that point, like in *Ratliff*, significant evidence had already been admitted, without objection, about the ammunition and the gun.

We conclude that because appellant did not timely object, he forfeited any error associated with the admission of the evidence about the gun and ammunition. *See* Tex. R. App. P. 33.1(a); *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980); *Ratliff*, 320 S.W.3d at 862 (explaining that a defendant's "failure to object at the time [a detective] specifically described the physical evidence and explained how he found that evidence forfeited any error

12

associated with [the defendant's] objection to the State's later introduction of the evidence"); *Tell v. State*, 908 S.W.2d 535, 543–44 (Tex. App.—Fort Worth 1995, no pet.) (holding that the defendant failed to preserve error by allowing several questions and answers regarding a ski mask before finally objecting); *Thomas v. State*, 884 S.W.2d 215, 216–17 (Tex. App.—El Paso 1994, pet. ref'd) (holding similarly). We overrule appellant's second issue.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 1, 2012