

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00124-CR
### NO. 02-14-00125-CR
### NO. 02-14-00126-CR
### NO. 02-14-00127-CR

JOHN B. ISBELL                                                              APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1290119D, 1290121D, 1290851D, 1290852D

----------

## MEMORANDUM OPINION[1]

----------

Appellant John B. Isbell appeals his convictions for evading arrest or detention with a vehicle, assault on a public servant with a vehicle, assault on a public servant with a shotgun, and deadly conduct. We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts**

Around 7:40 a.m. on July 17, 2012, Officer Steven Graves ran a routine license plate check on a Jeep stopped at a red light in Azle, Texas. The check revealed that a Class C warrant was attached to the car for Jonathan Garrett, a white male born in 1972. In the Jeep, Graves saw a woman in the driver's seat, later identified as Jamie Haney, and a white man in the front passenger seat whom Graves believed was about the right age.

Graves turned on the police car's red and blue lights to initiate a traffic stop. The Jeep did not stop, so Graves turned on his siren. Haney turned on her blinker as if she was going to pull over, and Graves saw the passenger turn around and aim a shotgun at him.

Graves swerved out of the way of the gun and called for backup. He followed the Jeep with his lights and siren on. The Jeep was going 85 miles per hour in 40–60 mile-per-hour speed limit zones and driving on the shoulder to pass cars. Graves testified that "the passenger was leaning outside the passenger's side window with the shotgun waving it around, so pointing it back at [Graves], pointing it all over the place." Graves eventually lost sight of the Jeep in traffic.

Kelly Orr, who had been driving to work that morning, saw the Jeep come up behind her and heard a loud booming noise. The car was driving "[e]rratically, aggressive, in and out of traffic," eventually crossing a grassy median into the

other direction of traffic.  Orr later discovered bullet holes in her rear bumper and license plate.

Azle police received information that a shotgun had been thrown out of a vehicle being pursued.  They recovered the shotgun from the roadway.  They also found a spent shell and a damaged shell in a different location.  A firearm and toolmark examiner was able to determine that the spent shell had been fired from the shotgun.

Around 9:00 p.m. the next evening, on July 18, 2012, Haltom City police found the Jeep parked in a residential area.  The car started and accelerated quickly.  Police chased the car for about twenty minutes with their lights and sirens on.  The car ran stop signs going about 70 miles per hour in 30-mile-per-hour zones, ran into cars on the highway, jumped medians, and reached speeds of about 115 or 125 miles per hour.  During the chase, the driver of the Jeep turned the car's headlights off.  The Jeep spun out trying to turn and drove down the wrong side of the road into oncoming traffic.  It also rammed a police patrol car while an officer was inside.

The Jeep hit a mailbox in front of a house and came to a stop.  Haney exited the car from the passenger's side and started running.  Appellant exited from the driver's side soon after and also started running.  Both were eventually caught and arrested.  Haney identified Appellant as the male passenger with her in the Jeep on July 17.  She admitted that Appellant had a shotgun in the car and that it had "gone off" while she was being pursued by Graves.

3

Appellant was charged by indictment for evading arrest or detention with a vehicle, assault on a public servant with a vehicle, assault on a public servant with a shotgun, and deadly conduct. A jury found him guilty on all four counts. The trial court sentenced him to twenty, forty-five, forty-five, and twenty years' confinement, respectively, to run concurrently.

**Discussion**

Appellant presents three issues on appeal. In his first issue, he argues that the trial court erred by granting the State's motion to consolidate. Before trial, the State filed a motion to consolidate the four indictments, arguing that the two offenses that occurred on July 17 and the two that occurred on July 18 arose out of the same criminal episode and were the repeated commission of similar offenses against peace officers. The trial court granted the motion over Appellant's objections. In its brief, the State concedes error but contends that such error was harmless. *See* Tex. Pen. Code Ann. § 3.04 (West 2011) ("Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses."). However, because of our disposition of issue two, we need not conduct a harm analysis on Appellant's first issue. *See* Tex. R. App. P. 47.1.

In his second issue, Appellant argues that the trial court erred by failing to instruct the jury on the accomplice-witness rule. He argues that the only evidence linking him to the two indictments for July 17 was Haney's testimony. Haney, he contends, was an accomplice to those crimes.

4

Article 38.14 of the code of criminal procedure provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Crim. Proc. Code Ann. art. 38.14 (West 2005). An accomplice witness is one who could be prosecuted for the same offense with which the accused is charged. *See Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987). When there is a question from the evidence whether a witness is an accomplice witness, it is proper to submit that fact issue to the jury. *Id.* at 322.

In reviewing a trial court's failure to instruct the jury on the accomplice-witness rule, we examine the record for evidence corroborating the accomplice-witness testimony. *Jones v. State*, 195 S.W.3d 279, 289 (Tex. App.—Fort Worth 2006), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007). When considering whether there is sufficient evidence to corroborate the testimony of an accomplice, we eliminate that testimony from our consideration and examine the record to ascertain whether the remaining evidence tends to connect the defendant to the offense. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). The corroborating evidence need not directly connect the defendant to the crime or be sufficient by itself to establish guilt, but it must do more than merely show the commission of the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).

5

Because Appellant did not object to the omission of the instruction, we must decide whether the error was so egregious and created such harm that he did not have a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Under the egregious harm standard, the omission of an accomplice-witness instruction is generally harmless unless the corroborating (nonaccomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Jones*, 195 S.W.3d at 290 (quoting *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

For the acts of July 17, Appellant was charged with aggravated assault and deadly conduct. Haney was charged with evading arrest or detention in a vehicle for driving the Jeep. But she could have been charged as a party to Appellant's acts if, with intent to promote or assist the commission of the offense, she solicited, encouraged, directed, aided, or attempted to aid Appellant's commission of the offense. *See* Tex. Penal Code Ann. § 7.02(a)(2) (West 2011).

The State contends that the present case is similar to *Hall v. State*, No. 14-13-00742-CR, 2014 WL 6085585 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014, pet. ref'd) (mem. op., not designated for publication). In *Hall*, the appellant was found guilty of aggravated assault against a public servant for shooting a gun from a car. *Id.* at *1. Two witnesses who were in the car with the

6

appellant testified at trial. *Id.* One testified that he had tried to stop the car when the police officer tried to initiate a traffic stop. *Id.* at *3. The other testified that she had hit the back of the gun to prevent the appellant from shooting it. *Id.* The appellate court held that the appellant was not entitled to an accomplice-witness instruction because neither witness "took any affirmative act to assist in shooting [the officer]." *Id.*

In this case, Haney did not stop when Officer Graves attempted a traffic stop. She kept driving at a high rate of speed and continued to do so after she heard the gun go off. She testified that the high speed chase was "pretty long" and that the gun went off in "the middle of it." This evidence raises at least a fact issue as to whether Haney intended to promote or assist Appellant's commission of the offense. Whether Haney had the requisite intent was a question of fact for the jury to decide. *See Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). Because the jury could have determined that Haney was an accomplice as a matter of fact, the trial court erred by not submitting the question and the accomplice-witness instruction to the jury. *See Biera v. State*, 280 S.W.3d 388, 393 (Tex. App.—Amarillo 2008, pet. ref'd).

We must now consider whether the error caused egregious harm. *Jones*, 195 S.W.3d at 290. The record reveals no other direct evidence tending to show that Appellant was in the Jeep on July 17 with Haney. Rick Horton testified that Appellant, Haney, and Garrett went to Horton's house early on July 17 to get the rearview mirror fixed on the Jeep. All three left together around 6:00 a.m., two

7

hours before Graves attempted to stop the car. Horton stated that the Jeep belonged to Garrett, and Graves testified that the warrant hit on the Jeep had returned for Garrett. Graves also testified that the man in the Jeep wore a hat and sunglasses, and he did not make an in-court identification of Appellant.

At trial, the State presented the events of July 17 and July 18 as part of the same criminal episode. *See Hutch*, 922 S.W.2d at 171 (stating that in the egregious-harm analysis, we consider the charge, the evidence, arguments of counsel, and any other relevant information revealed by the trial record as a whole). Because there was no other evidence besides Haney's testimony to link Appellant to the July 17 events, we believe that the error was such that it "affect[ed] 'the very basis of the case,' deprive[d] the defendant of a 'valuable right,' or 'vitally affect[ed] a defensive theory.'" *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (quoting *Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 172) (defining egregious harm). In all likelihood, the jury's deliberations on each indictment were influenced by the evidence supporting the others. *Llamas v. State*, 12 S.W.3d 469, 471–72 (Tex. Crim. App. 2000) (noting that trying multiple indictments at the same time raises "two legitimate concerns: (1) that the jury may convict a 'bad man' who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged") (citing 2 Wayne R. LaFave, Israel & King, *Criminal Procedure Criminal Practice Series,* 17.1(d)

(2nd ed. Supp.1999)).  The harm caused by the lack of the accomplice-witness instruction or evidence corroborating Haney's testimony permeated the entire trial.  *See Wedlow v. State*, 807 S.W.2d 847, 852 (Tex. App.—Dallas 1991, no pet.) (holding that harmful error "tainted the 'integrity of the process'" of entire trial).  Appellant was therefore egregiously harmed in all four indictments.  We sustain Appellant's second issue.  Because our conclusion regarding Appellant's second issue requires reversal of the trial court's judgment, we need not address his third issue concerning improper jury argument.  *See* Tex. R. App. P. 47.1.

## Conclusion

Having sustained Appellant's second issue, we reverse the trial court's judgment and remand the case for a new trial.


/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 26, 2015

9