COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-163-CR

 

 

LAMONT TERRELL LEADON                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 213TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction

Appellant Lamont Terrell Leadon appeals his
conviction for possession of cocaine with intent to deliver.  See Tex. Health & Safety Code Ann. ' 481.102(3)(D)
(Vernon Supp. 2008), ' 481.112(d) (Vernon 2003).  In one issue, he contends that the evidence is
legally and factually insufficient to prove his intent to deliver the
cocaine.  We affirm.








Background Facts

On May 9, 2007, a Fort Worth Police Department
(FWPD) SWAT team executed a search warrant at a Adope
house@ owned
by Leadon=s mother;[2]
the team was looking for crack cocaine. 
The SWAT team pried open burglar bars that blocked the front door of the
residence and entered inside it.  Members
of the team saw a loaded .38 caliber semi-automatic handgun near what appeared
to be crack cocaine on a table in the living room.  There was also a piece of tape on the floor
in front of the table, between the table and the front door.

FWPD Officer Ken Clowers found Leadon on the
kitchen floor; officers also found several other people in the residence.  Officer Clowers and FWPD Officer Jimmy
Ferguson, who was also in the kitchen, both saw an empty pistol holster on
Leadon=s belt
near his right hip.








Officer Clowers put handcuffs on Leadon to
temporarily detain him for questioning in connection with the search warrant
and escorted him out of the house.  He
then turned Leadon over to the perimeter team, which is a group of officers
assigned to cover the outside area surrounding the house and to interview those
detained.  FWPD Officer R.M. Salazar
gained Leadon=s consent to search him; Officer
Salazar found a plastic bag containing crack cocaine in Leadon=s front
pants pocket.  Officer Salazar saw the
holster on Leadon=s belt but did not take it into
evidence because he did not realize there was a weapon in the house.  A chemist later weighed the cocaine at 11.94
grams.

The grand jury indicted Leadon with possession
with intent to deliver cocaine of more than four but less than two hundred
grams.  Leadon pled not guilty and Anot true@ to a
deadly weapon allegation.  After the
parties filed various pretrial documents and presented their cases, the jury
found him guilty, but it found that the deadly weapon allegation was not
true.  Leadon elected to have the trial
judge determine punishment, and the judge sentenced him to twenty years=
confinement.  Leadon timely filed his
notice of this appeal.

Standards of Review

Legal sufficiency








In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007). 
This standard gives full play to the responsibility of the trier of fact
to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778. 


The trier of fact is the sole judge of the weight
and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  

Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  In determining the
legal sufficiency of the evidence to show an appellant=s
intent, and faced with a record that supports conflicting inferences, we Amust
presumeCeven if
it does not affirmatively appear in the recordCthat the
trier of fact resolved any such conflict in favor of the prosecution, and must
defer to that resolution.@ 
Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).








Factual sufficiency

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is nevertheless
so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704B05 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.  A factual sufficiency review of
circumstantial evidence is the same as a review of direct evidence.  King v. State, 29 S.W.3d 556, 565
(Tex. Crim. App. 2000); Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999) (reasoning that A[c]ircumstantial
evidence, by itself, may be enough to support the jury=s
verdict@).








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Watson, 204 S.W.3d at 417.  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  

Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
appellant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.  

Analysis








The jury convicted Leadon for possessing while
intending to deliver cocaine.  AIn a
possession with intent to deliver case, the State must prove that the defendant:
(1) exercised care, custody, control, or management over the controlled
substance; (2) intended to deliver the controlled substance to another; and (3)
knew that the substance in his possession was a controlled substance.@  Parker v. State, 192 S.W.3d 801, 805
(Tex. App.CHouston [1st Dist.] 2006, pet.
ref=d). 

Leadon contends in his only issue that the
evidence is legally and factually insufficient to prove his intent to
deliver.  We disagree.          








Intent to deliver can be proved by circumstantial
evidence.  See Jones v. State, 195
S.W.3d 279, 288 (Tex. App.CFort
Worth 2006) (op. on reh=g), aff=d, 235
S.W.3d 783 (Tex. Crim. App. 2007); Rhodes v. State, 913 S.W.2d 242, 251
(Tex. App.CFort Worth 1995) (explaining
that such intent, for example, may be inferred from the quantity of drugs or
the manner of their packaging), aff=d, 945
S.W.2d 115 (Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997).  Courts consider several factors in
determining such intent, including (1) the nature of the location where the
defendant was arrested; (2) the quantity of drugs the defendant possessed; (3)
the manner of packaging the drugs; (4) the presence or absence of drug
paraphernalia (for use or sale); (5) whether the defendant possessed a
large amount of cash in addition to the drugs; and (6) the defendant=s status
as a drug user.  Jones, 195 S.W.3d
at 288; Jordan v. State, 139 S.W.3d 723, 726 (Tex. App.CFort
Worth 2004, no pet.).  AThe number
of factors present is not as important as the logical force the factors have in
establishing the elements of the offense.@  Moreno v. State,  195 S.W.3d 321, 326 (Tex. App.CHouston
[14th Dist.] 2006, pet. ref=d) (op.
on reh=g).

Officers arrested Leadon in a house in which the
police had previously executed several other search warrants.[3]  Officer Ferguson testified that the SWAT team
had a drawing of the floor plan of the interior of the house from these prior
visits.  Officer Clowers testified that
the layout had been confirmed on repeat visits.








Leadon=s mother
owned the house, but neither she nor Leadon lived in it. Throughout trial,
numerous uncontested references were made to the house=s status
as a Adope
house@ or a Adrug
house.@  The house had features associated with other
drug housesCOfficers Ferguson and Hickey
testified that it had burglar bars in the windows and doors, a table facing the
front door, a loaded gun on the table next to some drugs,[4]
and a piece of tape on the floor in front of the coffee table.  According to Officer Hickey, the tape
indicated that drug sales took place in the house because the tape represented
a line that potential drug buyers could not cross, protecting the drug sellers
from violence or theft.[5]  Officers found more drugs in the kitchen
drainpipe.

Leadon possessed over eleven grams of crack
cocaine in the form of a Acookie.@[6]  Officer Salazar, who has executed two or
three hundred search warrants as part of the FWPD=s
narcotics division, testified that a Acookie@ is made
by cooking cocaine into a large, round, solid mass from which dealers can
easily break off pieces as small as .2 grams to sell.[7]  He also testified that the amount of cocaine
that he found on Leadon was a Adealer
amount@ because
Apeople .
. .  doing personal use don=t buy
large amounts like [Leadon had] and carry it around with them.@  Several officers testified that the amount of
cocaine found on Leadon is well over what is usually found on a mere user.








Leadon did not possess a large amount of cash at
the time of his arrest; however, Officer Salazar testified that it is common
for drug dealers to separate their money from their drugs to protect themselves
if they are robbed or searched by police. 
Officer Hickey testified likewise. 
In addition, Officer Hickey testified that the absence of cash in Leadon=s
possession could have occurred because Leadon had just bought the eleven grams
of cocaine (with the intent to resell the cocaine) and therefore did not have
any money on him.

Finally, while Leadon did not possess any drug
paraphernalia indicating an intent to sell, he also did not possess any
paraphernalia indicating an intent to merely use.  See Jordan, 139 S.W.3d at 726.  There was no testimony regarding Leadon=s status
as a drug user.

The evidence detailed above could have allowed a
rational jury to determine beyond a reasonable doubt that Leadon had an intent
to deliver the cocaine.  Viewing the
evidence in the light most favorable to the jury=s
verdict and deferring to the jury=s
implicit resolution of the weight of the evidence, we hold that the evidence is
legally sufficient to support the jury=s
verdict.  See Clayton, 235
S.W.3d at 778.  We therefore overrule the
legal sufficiency portion of Leadon=s first
issue.

Leadon also contends the evidence is factually
insufficient to prove his intent to deliver. 
Again, we disagree.








Because no evidence presented at trial directly
conflicted with the evidence above, the jury=s
determination about Leadon=s intent
to deliver could only be reversed for factual insufficiency if the evidence was
so weak that the determination was clearly wrong and manifestly unjust.  See Lancon, 253 S.W.3d at
705.  We cannot conclude that standard
has been satisfied based on the evidence presented.

The State presented testimony from numerous
officers as to the events related to the search warrant and the cocaine found
on Leadon.  The jury heard from officers
with substantial training and experience in drug-related cases, and the jury=s
determination was based on evidence that they implicitly found credible.  This testimonial evidence was not so
weak that we can say the jury=s
determination was clearly wrong or manifestly unjust.  Id. at 704B05; Watson,
204 S.W.3d at 414B15, 417.








At trial, Leadon=s
counsel seemed to theorize that Leadon went to the house for his mother to
investigate reports by a neighbor that something was amiss.  Although his mother=s
testimony provides some evidence that supports this alternate explanation, the
jury was free to either believe or disbelieve the conflicting theory of why
Leadon was at the house.  See Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001) (stating that it Ais a
jury, not a reviewing court, that accepts or rejects reasonably equal competing
theories@); Gregory
v. State, 159 S.W.3d 254, 261 (Tex. App.CBeaumont
2005, pet. ref=d).  Furthermore, the theory does nothing to
account for the cocaine Acookie@ found
on Leadon.  

Affording the jury=s
decision appropriate deference under the authority cited above, we conclude
that the evidence is factually sufficient to support the jury=s
verdict.  See Taylor v. State, 106
S.W.3d 827, 831 (Tex. App.CDallas
2003, no pet.) (explaining that Aintent
to deliver is a question of fact for the jury to resolve, and it may be
inferred from the acts, words, or conduct of the accused@).  We therefore also overrule the factual
sufficiency portion of Leadon=s only
issue.

Conclusion

Having overruled Leadon=s sole
issue, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

 

PANEL:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: June 25, 2009











[1]See Tex. R. App. P. 47.4.





[2]At the time of Leadon=s arrest, his mother had
rented the house to a third party.





[3]The FWPD=s visits to the house
began in 2002.





[4]The State presented
evidence that narcotics dealers typically carry weapons.  Officer Ferguson has found weapons hundreds
of times while executing search warrants on suspected drug houses.  Officer Clowers stated that the gun that the
officers found in this case could fit into Leadon=s holster.





[5]Officer Hickey has been a
police officer for sixteen years, has purchased or supervised other officers
purchasing crack cocaine over one hundred times, has been into over one hundred
drug houses, and has interviewed over one hundred drug users and approximately
seventy-five drug dealers.





[6]A chemist testified as to
the weight and nature of the drug.





[7]Other cases support
testimony regarding a Acookie@ of cocaine as supporting
a jury=s determination of intent
to deliver.  See Jelks v. State,
No. 14‑07‑00295‑CR, 2008 WL 5132655, at *3 (Tex. App.CHouston [14th Dist. Dec.
4, 2008, pet. ref=d)  (mem. op. on reh=g, not designated for
publication); Hodge v. State, No. 11‑05‑00239‑CR, 2007
WL 1849098, at *4 (Tex. App.CEastland June 28, 2007, pet. ref=d) (not designated for
publication).