PD-0469&0470&0471&0472-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/27/2015 4:19:05 PM
Accepted 5/28/2015 3:23:16 PM
ABEL ACOSTA
CLERK

IN THE
COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| JOHN B. ISBELL, | § | |
| *APPELLANT* | § | |
| V. | § | NO. PD-0469-15 |
| | § | |
| THE STATE OF TEXAS, | § | |
| *APPELLEE* | § | |

*STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT OF APPEALS DISTRICT OF TEXAS IN CAUSE NUMBERS 02-14-00124-CR, 02-14-00125-CR, 02-14-00126-CR, AND 02-14-00127-CR, REVERSING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBERS 1290119D, 1290121D, 1290851D, AND 1290852D IN CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY, TEXAS; THE HONORABLE MIKE THOMAS, PRESIDING.*

§ § §
STATE'S PETITION FOR REVIEW
§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney,
Chief, Post-Conviction

JAMES GIBSON, Assistant
Criminal District Attorney
State Bar No. 00787533
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAAppellateAlerts@TarrantCounty.com

FILED IN
COURT OF CRIMINAL APPEALS

May 28, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF THE PARTIES AND COUNSEL

The trial judge was Hon. Mike Thomas, presiding judge of Criminal District Court No. 4 of Tarrant County, Texas.

The State of Texas, represented by Sharen Wilson, Tarrant County Criminal District Attorney, is a party to this litigation. At trial, the State was represented by Paige Simpson and Brooke Panuthos, Assistant Criminal District Attorneys. On appeal, the State is represented by James Gibson, Assistant Criminal District Attorney, and Debra Windsor, Assistant Criminal District Attorney. The address of these attorneys is Office of the Criminal District Attorney of Tarrant County, 401 W. Belknap, Fort Worth, Texas 76196-0201.

Appellant, Defendant below, is John B. Isbell. Appellant was represented at trial by Hon. J. Steven Bush, 314 Main St., Suite 200, Fort Worth, Texas 76102 and on appeal by Hon. Barry G. Johnson, 2821 E. Lancaster, Fort Worth, Texas 76103.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT .................................................1

STATEMENT OF THE CASE.................................................................................2

PROCEDURAL HISTORY AND COURT OF APPEAL'S OPINION...................3

QUESTION FOR REVIEW ....................................................................................4

STATEMENT OF FACTS ......................................................................................5

DISCUSSION ......................................................................................................10

I.      The Court of Appeals' opinion.................................................................10

II.     The egregious harm standard in an accomplice witness instruction case .....11

III.    The court of appeals reversed two convictions that had nothing to do with an accomplice witness instruction..................................................................12

IV.     The second car chase tended to connect Appellant to the first .....................15

CONCLUSION....................................................................................................18

PRAYER..............................................................................................................19

CERTIFICATE OF COMPLIANCE....................................................................20

CERTIFICATE OF SERVICE ............................................................................20

COURT OF APPEALS' OPINION.......................................................APPENDIX

# TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*Almanza v. State*,
686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) .............................10, 11

*De La Paz v. State*,
279 S.W.3d 336 (Tex. Crim. App. 2009) ..........................................................17

*Head v. State*,
No. 03-10-00414-CR, 2013 WL 1831576 (Tex. App.—Austin
April 24, 2013, no pet.) (unpublished) ...............................................................16

*Herron v. State*,
86 S.W.3d 621 (Tex. Crim. App. 2002) ...........................................................11

*Isbell v. State*,
No. 02-14-00124(-127)-CR, 2015 WL 1407749 (Tex. App.—Fort
Worth March 26, 2015, pet. filed) ..............................................................*passim*

*Lacaze v. State*,
346 S.W.3d 113 (Tex. App.—Houston [14th Dist.] 2011, pet.
ref'd) ...................................................................................................................18

*Lawton v. State*,
913 S.W.2d 542 (Tex. Crim. App. 1995), *overruled on other
grounds, Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)..................15

*Llamas v. State*,
12 S.W.3d 469 (Tex. Crim. App. 2000) ...........................................................13

*Mitchell v. State*,
No. 11-01-00294-CR, 2002 WL 32344526 (Tex. App.—Eastland
2002, no pet.) (unpublished) .............................................................................15

*Mosley v. State*,
983 S.W.2d 249 (Tex. Crim. App. 1998) ............................................................15

*In re P.A.*,
No. 05-96-01264-CV, 1997 WL 470147 (Tex. App.—Dallas Aug.
19, 1997, pet. denied)........................................................................................16

## Statutes

TEX. CODE CRIM. PROC. art. 38.14..........................................................................10

TEX. R. APP. P. 47.1 ............................................................................................13n

IN THE
COURT OF CRIMINAL APPEALS

JOHN B. ISBELL,          §
    *APPELLANT*          §
              §
V.          §          NO. PD-0469-15
              §
THE STATE OF TEXAS,          §
    *APPELLEE*          §

*STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT OF APPEALS DISTRICT OF TEXAS IN CAUSE NUMBERS 02-14-00124-CR, 02-14-00125-CR, 02-14-00126-CR, AND 02-14-00127-CR, REVERSING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBERS 1290119D, 1290121D, 1290851D, AND 1290852D IN CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY, TEXAS; THE HONORABLE MIKE THOMAS, PRESIDING.*

STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary in resolving the issues raised by this case.

1

## STATEMENT OF THE CASE

Appellant was convicted of (1) aggravated assault on a peace officer (pointing a shotgun at him); (2) deadly conduct (shooting a woman's car); (3) aggravated assault on a peace officer (ramming the officer's patrol car); and (4) evading arrest in a vehicle. Appellant was sentenced to forty-five years for each assault, twenty years for deadly conduct, and twenty years for evading arrest. RR VI – 38.

PROCEDURAL HISTORY AND COURT OF APPEALS' OPINION

On appeal, Appellant complained that offenses on two different days had been improperly joined in one trial (App. brief at 12); that the trial court should have *sua sponte* given the jury an accomplice witness instruction (App. brief at 15); and that the prosecutor engaged in improper argument (App. brief at 18).

A panel of the Fort Worth Court of Appeals agreed with Appellant that he should have received an accomplice witness instruction. *Isbell v. State*, No. 02-14-00124(-127)-CR, 2015 WL 1407749 at *3 (Tex. App.—Fort Worth March 26, 2015, pet. filed) (mem op., not designated for publication). The Court also found that Appellant was egregiously harmed by the instruction's absence. *Id*. The Court did not reach Appellant's other two claims. *Id*. at *2, 3.

## QUESTION FOR REVIEW

Did the court of appeals employ a deficient egregious harm analysis by applying it to two convictions where there was no accomplice witness issue?

(1)  Did the court of appeals employ a deficient egregious harm analysis where it failed to consider whether related extraneous offense evidence supplied sufficient corroboration of an accomplice's testimony?

## STATEMENT OF FACTS

Appellant was involved in two massive police chases on two successive summer nights in 2012. During the first chase, Appellant was a mere passenger – but a passenger who pointed a shotgun at police and actually shot the car of a passing motorist. In the following night's chase, Appellant was the driver. He was finally caught when he crashed and tried to flee on foot.

Around 6:00 a.m. on the morning of July 17, 2012, Appellant, Jamie Haney, and Johnny Garrett went in Garrett's Jeep to visit Rick Horton at his home. RR IV – 36. Horton fixed a broken mirror on the Jeep, and they left straight away. RR IV – 37-38.

Around 7:40 that morning, Officer Steven Graves of the Azle Police performed a routine license plate check on that Jeep. RR IV – 40. A hit was returned with a Class C warrant. *Id*. The only information Graves received was that the subject's name was Jonathan Garrett, white male, born in 1972. RR IV – 41. In the car, Graves saw a female driver and a male passenger. *Id*. The woman was Jamie Haney. RR IV - 76. It seemed to Officer Graves that the passenger was the right race and age for Garrett. RR IV - 41. The man turned out to be Appellant. RR IV - 76.

5

Graves turned on his overhead lights and tried to stop the Jeep. RR IV – 42. Haney turned on the blinker, but she didn't pull over. RR IV – 43. Appellant leaned over the center console, pulled up a shotgun, and pointed it in Graves' direction. *Id.* Graves swerved to the right, just in case Appellant decided to shoot. RR IV – 44. He kept following the Jeep. RR IV – 45. Haney's speed increased to about 85 mph as she pulled to the shoulder of the roadway in order to pass other cars. RR IV – 46. Appellant continued to lean out the passenger window, waving the shotgun around. *Id.* The officer eventually lost sight of the Jeep. *Id.*

Around this time, Kelly Orr was driving with her daughter on that same street, Highway 199 in Azle. RR IV – 130, 132. A Jeep came quickly behind her, apparently trying to go around. RR IV – 130. The driver and passenger were "crazy," throwing hands in the air and moving around a lot. RR IV – 131. After the Jeep went around her, Orr could see the police car that had been chasing the Jeep. *Id.* Before that happened, however, Orr heard a loud "boom." *Id.* A couple of days later, she saw small bullet holes in her bumper. RR IV – 134.

Near Lake Worth, Medea Lee Spigler was also driving on Highway 199. RR IV – 143. A car came up fast behind her, and she also heard a loud noise. RR IV – 147. Spigler thought she had had a blow-out. RR IV – 148. She was going to pull over, but she looked behind her and saw the passenger in the Jeep hanging outside

6

the window with a shotgun. RR IV – 148. Spigler was shaken up by the fact that she heard the shotgun go off near her. RR IV – 149.

Jamie Haney testified. She said that Appellant was definitely the passenger in her car. RR IV – 76. He had a shotgun with him in the car. *Id*. During the chase, while traveling at about 120 mph, Haney heard the shotgun go Officer RR IV – 86. It was pointed forward. *Id*. Appellant turned to her and said, "You're my Bonnie." RR IV – 97. They got away from police that day. RR IV – 87.

Corporal Patrick Bovea searched the roadway in the area of the chase based on information that Appellant had dropped his shotgun into the road. RR IV – 67. He eventually found a shotgun. RR IV – 68. Leah Creighton of the Fort Worth Police found some shell casings on the side of Highway 199. RR IV – 102. She collected those. *Id*. The shells came from the same Mossberg shotgun that had also been recovered. RR IV – 119.

The following evening, July 18, Sgt. Cody Phillips of the Haltom City Police Department, had already received a bulletin from Azle Police Department describing the "shotgun chase" of the previous morning. RR IV – 250. Phillips saw what looked like the Jeep parked on a street in Haltom City. RR IV – 251. He confirmed that it was the correct vehicle by checking the license plates. RR IV – 252. Phillips was watching the Jeep when it started to take Officer RR IV – 253.

7

He followed it and turned on his overhead lights. RR IV – 254. The Jeep did not stop. *Id*. Officers Parsons, Michlitsch, and Gilley, joined in the chase. RR IV – 255. All three patrol cars had to drive through railroad crossing arms at Beach and Broadway (in Haltom City) in order to continue the pursuit. RR IV – 258. The chase continued onto I-35 and I-820, where Appellant made it to 115 mph. RR IV – 260. During this chase, Appellant (who was driving this time) crossed into oncoming traffic, jumped a median, jumped curbs, drove on the shoulder, and ignored traffic signals. RR IV – 262-63. All in all, the chase lasted about twenty-four and a half miles. RR IV – 163. He even turned off his headlights to avoid being seen. RR IV – 263. It was at this point that Appellant rear-ended a car in a high speed collision. RR IV – 200-201.

Eventually, Appellant ended up going through a ditch and spinning out inside a gas station parking lot. RR IV – 177. Officer Parsons followed behind. RR IV – 178. Appellant turned back around, pointed toward Parsons's car, and accelerated toward the squad car's driver's door. *Id*. Parsons sped up just in time for Appellant to ram the patrol car in the rear. RR IV – 179. Finally, Appellant crashed the Jeep into a mailbox. *Id*. He got out of the driver's side to run, and Haney got out of the other side. RR IV – 265. Phillips basically tackled Appellant,

but he would not relent. RR IV – 266. Appellant finally had to be tased, then handcuffed. RR IV – 267. Haney was caught as well. RR IV – 268.

Appellant was convicted of four separate offenses: (1) aggravated assault on Officer Graves (pointing the shotgun at him – 7/17); (2) deadly conduct on Kelly Orr (shooting her car – 7/17); (3) aggravated assault on Officer Parsons (ramming his patrol car – 7/18); and (4) evading arrest in a vehicle (7/18).

I.      *The Court of Appeals' opinion.*

Because Haney was the driver of the Jeep when Appellant pointed a gun at a police officer and shot at a car, the Fort Worth Court of Appeals determined that the trial court should have instructed the jury on the accomplice-witness rule. *Isbell*, 2015 WL 1407749 at *2-3; TEX. CODE CRIM. PROC. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

As Appellant failed to object to the lack of an accomplice-witness instruction, the Fort Worth Court of Appeals had to perform an egregious harm analysis. *Isbell*, 2015 WL 1407749 at *3; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In its analysis, the court pointed out that (with regard to the July 17 chase) the Jeep belonged to Garrett, the warrant hit on the Jeep was for Garrett, and that Officer Graves was unable to identify Appellant as the man in the Jeep. *Isbell*, 2015 WL 1407749 at *3. The court tied its analysis to the fact that Appellant was on trial for four indicted offenses (two occurring on July 17 and two occurring on July 18): "In all likelihood, the jury's deliberations

on each indictment were influenced by the evidence supporting the others. . . . The harm caused by the lack of the accomplice-witness instruction or evidence corroborating Haney's testimony permeated the entire trial. . . . Appellant was therefore egregiously harmed in all four indictments." *Id.* (omitted citations contained within ellipses).

II.       *The egregious harm standard in an accomplice witness instruction case*

Where a defendant fails to preserve error by not bringing to the trial court's attention an improper omission in the jury charge, he must show that he was egregiously harmed. *Almanza*, 686 S.W.2d at 157. With regard to the absence of an accomplice-witness instruction, non-accomplice evidence can render that error harmless by essentially fulfilling the purpose the instruction was designed to serve – that is, if that non-accomplice evidence tends to connect the defendant to the offense. *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). This Court has held that absence of an accomplice-witness instruction is "generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Id.* (*quoting Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

III.     *The court of appeals reversed two convictions that had nothing to do with an accomplice witness instruction*

As noted above, the Fort Worth Court of Appeals reversed Appellant's convictions for the two crimes which occurred on July 18 because, apparently, the lack of a corroboration instruction for the July 17 crimes "permeated the entire trial." *Isbell*, 2015 WL 1407749 at *3.

In the first place, there is no basis in the law for an application of the court's "did-it-permeate" standard to an egregious harm analysis. Again, the issue was whether there should have been an accomplice witness instruction with regard to Jamie Haney's testimony concerning Appellant's use of a firearm during the car chase that took place on July 17. *See id.* at *2 ("[Appellant] argues that the only evidence linking him to the two indictments for July 17 was Haney's testimony."). *See also id.* at *3 (egregious harm analysis begins, "The record reveals no other direct evidence tending to show that Appellant was in the Jeep on July 17 with Haney."). The opinion analyzes the strength of non-accomplice evidence with regard to the July 17 chase and finds it lacking. *See id.*

The analysis then slides off the rails. Inexplicably, the panel shifts from a discussion of the lack of an accomplice witness charge concerning the July 17

events to a lamentation of the fact that Appellant was simultaneously tried for his crimes of the following day: "In all likelihood, the jury's deliberations on each indictment were influenced by the evidence supporting the others." *Id.* None of this meditation has a basis in law. The panel tries to support this by citing to some general principles contained in *Llamas v. State*, 12 S.W.3d 469 (Tex. Crim. App. 2000). However, the issue in *Llamas* was what harm standard applied when a trial court failed to grant a mandatory severance of charges. *Id.* at 471-72. *Llamas* is inapposite. The existence of multiple indictments has nothing to do with the egregious harm analysis of the failure to give an accomplice witness charge – *in a different pair of indictments.*[1]

Second, even if the appellate panel employed the correct egregious harm standard, it applied it to the wrong convictions. The issue in Appellant's second point of error was whether Appellant was harmed by the lack of an accomplice witness instruction as applied to the events on July 17. What happened on July 18

---

[1] Obviously, the panel was concerned that the July 18 offenses were tried with the July 17 offenses – over Appellant's objection. Appellant complained about this issue in his first point of error. App. brief at 12. The panel did not consider this point of error, choosing instead to dispose of Appellant's appeal on the basis of the accomplice witness instruction claim. *See Isbell*, 2015 WL 1407749 at *2. However, the panel's displeasure at the refusal to sever creeps up in its accomplice charge analysis, an analysis that appears almost irresistible to the panel. If the severance issue was so important, the appellate panel should have gone ahead and performed a proper harm analysis on that basis. *See* TEX. R. APP. P. 47.1 (court of appeals' opinion must address issues that are "necessary to final disposition of the appeal"). As it did not, the State is in no position to respond to the panel's off-the-cuff musings.

13

was obvious, and – if any corroboration were needed – overwhelmingly corroborated.

It should be pointed out that the State did not elicit any information from Haney about the car chase that occurred on July 18. Appellant did that. *See* RR IV – 87-90. Haney testified that Appellant drove during the chase and described the events that ended up in their arrest. RR IV – 90. She also testified that Appellant wasn't trying to hit anybody. *Id*. If the appellate court thought this was accomplice witness testimony, it certainly did not say so.[2] But even if it could have been regarded as such, there was plenty of corroborating evidence that tended to connect Appellant to his July 18 evading arrest and assault on an officer charges. Namely, police were involved in the chase and captured Appellant as he tried to run from them – after he wrecked the car. *See* RR IV – 177-79, 258, 260-63, 266-67. The July 18 car chase was no whodunit.

There was simply no accomplice witness instruction error related to the two crimes which occurred on July 18. Even if there had been, there was ample corroboration of Haney's testimony. Despite this, and because of the panel's muddled harm analysis, the Fort Worth Court of Appeals chose to reverse both of the July 18-related judgments. This Court should correct that decision.

---

[2] It is undisputed that, on July 18, Haney was a mere passenger – not the driver like the day before.

IV.		*The second car chase tended to connect Appellant to the first.*

The Fort Worth Court of Appeals also reversed the convictions arising from the July 17 crimes. It held that Haney was a possible accomplice-in-fact, and that omitting an accomplice witness instruction from the jury charge egregiously harmed Appellant – because there was "no other direct evidence tending to show that Appellant was in the Jeep on July 17 with Haney." *Isbell*, 2015 WL 1407749 at *3.

The panel's reliance on a lack of "direct" evidence ignores what really connected Appellant to the July 17 crimes – his participation in the July 18 chase (participation which was undisputed). Ignoring this evidence was a mistake.

Extraneous offense evidence must be considered in a determination of whether there exists sufficient non-accomplice corroborating evidence. *See Lawton v. State*, 913 S.W.2d 542, 553 n.9 (Tex. Crim. App. 1995) ("We unequivocally hold that extraneous offense evidence is admissible under Rule 404(b) for the purpose of corroboration under Article 38.14."), *overruled on other grounds, Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). The Eastland court of appeals dealt with this issue in a case that, from a corroboration point of view, is similar to Appellant's. *Mitchell v. State*, No. 11-01-00294-CR, 2002 WL 32344526 (Tex. App.—Eastland 2002, no pet.) (unpublished). A woman (Mitchell's

accomplice) testified that Mitchell waited in his car while she robbed a victim. *Id.* at \*1. The victim testified but could only see the back of a man's head in the car next to her own. *Id.* The State presented evidence that the next day both the accomplice and Mitchell attempted to steal a purse from another woman. *Id.* This time, the victim was able to identify Mitchell. *Id.* Mitchell claimed that the accomplice's testimony was not sufficiently corroborated by other evidence. *Id.* at \*2. The court disagreed:

> The non-accomplice testimony in this case consisted of the victim's account of what transpired and the evidence of the extraneous offense elicited from the victim of the extraneous offense and the police officer who investigated the offenses. As noted above, the circumstances of the two offenses were quite similar. The evidence of the extraneous offense offered by the non-accomplices tended to connect [Mitchell] to the charged offense.

*Id.* at \*3. Appellant's situation is the same. His putative accomplice was the driver in a car chase while Appellant was shooting at police. The next day, he participated in a similar crime with that same accomplice. *See also Head v. State*, No. 03-10-00414-CR, 2013 WL 1831576 at \*5 (Tex. App.—Austin April 24, 2013, no pet.) (evidence that robbery defendant had gun on night of robbery tended to establish his identity as one of the gunmen and corroborate the testimony of his accomplice) (unpublished); *In re P.A.*, No. 05-96-01264-CV, 1997 WL 470147 at \*6 (Tex. App.—Dallas Aug. 19, 1997, pet. denied) (evidence that juvenile committed

16

extraneous assault offense with sawed-off shotgun admissible in capital murder case (where one of the weapons at the scene was a sawed-off shotgun) because it corroborated the testimony of his accomplice).

In Appellant's case, his July 18 car chase was not – in a technical sense – an "extraneous offense." He was, after all, on trial for evading arrest (and trying to ram an officer's car) in addition to the firearm-related activities of the previous day. But that evading *was* extraneous to the July 17 crimes that Haney testified about. To the extent that Appellant's evading was interconnected with the previous day's car chase, it certainly "tended to connect" him to that crime. First, although the roles of driver and passenger were reversed, the two sets of crimes were remarkably similar. Simply from the perspective of participating in a high-speed car chase with the same woman, on two successive days, in the same Jeep, the "doctrine of chances" alone should be sufficient to connect Appellant with the offense. *See De La Paz v. State*, 279 S.W.3d 336, 347-48 (Tex. Crim. App. 2009) ("extraordinary coincidence" of repeated unlikely extraneous conduct makes it more likely defendant committed charged offense). This is precisely what the *Mitchell* court was driving at when it found that the similarity of the (well-proved) extraneous offense with the charged offense tended to connect the defendant to the charged offense. *Mitchell* at *3.

Second, Appellant's driving of the same Jeep during the second chase tends to connect him to the previous day's chase. On July 17, Haney was driving a Jeep and a man was shooting at police from that Jeep. On the very next day, Appellant himself led police on another high-speed chase using *the very same Jeep* (this time with Haney as a passenger) and even went so far as to use that Jeep *as a weapon*. Certainly, if Appellant had used the same gun that had been used in a previous crime, that gun would connect him to that crime – in this case, the Jeep is no different. *See Lacaze v. State*, 346 S.W.3d 113, 117 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (defendant's use of same gun in extraneous robbery sufficiently corroborated accomplice testimony with regard to charged robbery).

Evidence of the July 18 car chase tended to connect Appellant to the car chase that occurred on July 17. The Fort Worth Court should have found this connection and should have therefore found that Appellant was not egregiously harmed by the lack of an accomplice-witness instruction.

CONCLUSION

The Fort Worth Court of Appeals misapplied the egregious harm standard in two ways. First, it reversed two judgments that were irrelevant to both its finding of charge error and its harm analysis. Second, the Court failed to incorporate in its

18

analysis Appellant's "other" offenses – the offenses that were so similar in substance and spirit to the "accomplice" crime that those alone connected him to the events of the previous day. This Court should reverse the Fort Worth Court's opinion and hold that the trial court's failure to include an accomplice-witness instruction was not egregiously harmful as to all Appellant's convictions. Alternatively, this case should be reversed with instructions for the Fort Worth Court of Appeals to re-analyze harm while incorporating evidence of the second car chase.

## PRAYER

The State prays that its petition be granted and that the Court of Appeals' judgment reversing the judgment of the trial court be reversed.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney,
Chief, Post-Conviction

/s/ James Gibson
JAMES GIBSON, Assistant
Criminal District Attorney
State Bar No. 00787533
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAappellatealterts@tarrantcounty.com

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 3,606 words.

/s/ James Gibson
JAMES GIBSON

## CERTIFICATE OF SERVICE

A copy of the State's petition for discretionary review has been sent to opposing counsel, Hon. Barry G. Johnson, barrygj@aol.com, 2821 E. Lancaster, Fort Worth, Texas 76103 on May 27, 2015.

/s/ James Gibson
JAMES GIBSON

20

COURT OF APPEALS' OPINION.......................... APPENDIX

2015 WL 1407749
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH TEX. R. APP. P. 47.2(B)
Court of Appeals of Texas,
Fort Worth.

John B. Isbell, Appellant

v.

The State of Texas, State

NO. 02–14–00124–CR, NO. 02–14–00125–
CR, NO. 02–14–00126–CR, NO. 02–14–
00127–CR | DELIVERED: March 26, 2015

FROM CRIMINAL DISTRICT COURT NO. 4 OF
TARRANT COUNTY, TRIAL COURT NO. 1290119D,
1290121D, 1290851D, 1290852D

**Attorneys and Law Firms**

BARRY G. JOHNSON FORT, WORTH, TEXAS, FOR
APPELLANT.

SHAREN WILSON, CRIMINAL DISTRICT ATTORNEY;
DEBRA WINSOR, CHIEF OF POST CONVICTIONS;
JAMES GIBSON, BROOKE PANUTHOS AND PAGE
CATHERINE SIMPSON, ASSISTANT CRIMINAL
DISTRICT ATTORNEY(S) FOR TARRANT COUNTY
FORT WORTH, TEXAS, FOR STATE.

PANEL: LIVINGSTON, C.J.; DAUPHINOT and
GABRIEL, JJ.

**MEMORANDUM OPINION** [1]

1     *See*Tex.R.App. P. 47.4.

LEE GABRIEL, JUSTICE

**\*1** Appellant John B. Isbell appeals his convictions for
evading arrest or detention with a vehicle, assault on a public
servant with a vehicle, assault on a public servant with a
shotgun, and deadly conduct. We reverse and remand.

**Background Facts**

Around 7:40 a.m. on July 17, 2012, Officer Steven Graves ran
a routine license plate check on a Jeep stopped at a red light in
Azle, Texas. The check revealed that a Class C warrant was
attached to the car for Jonathan Garrett, a white male born in
1972. In the Jeep, Graves saw a woman in the driver's seat,
later identified as Jamie Haney, and a white man in the front
passenger seat whom Graves believed was about the right age.

Graves turned on the police car's red and blue lights to initiate
a traffic stop. The Jeep did not stop, so Graves turned on his
siren. Haney turned on her blinker as if she was going to pull
over, and Graves saw the passenger turn around and aim a
shotgun at him.

Graves swerved out of the way of the gun and called for
backup. He followed the Jeep with his lights and siren on.
The Jeep was going 85 miles per hour in 40–60 mile-per-hour
speed limit zones and driving on the shoulder to pass cars.
Graves testified that "the passenger was leaning outside the
passenger's side window with the shotgun waving it around,
so pointing it back at [Graves], pointing it all over the place."
Graves eventually lost sight of the Jeep in traffic.

Kelly Orr, who had been driving to work that morning, saw
the Jeep come up behind her and heard a loud booming noise.
The car was driving "[e]rratically, aggressive, in and out of
traffic," eventually crossing a grassy median into the other
direction of traffic. Orr later discovered bullet holes in her
rear bumper and license plate.

Azle police received information that a shotgun had been
thrown out of a vehicle being pursued. They recovered the
shotgun from the roadway. They also found a spent shell and a
damaged shell in a different location. A firearm and toolmark
examiner was able to determine that the spent shell had been
fired from the shotgun.

Around 9:00 p.m. the next evening, on July 18, 2012, Haltom
City police found the Jeep parked in a residential area. The
car started and accelerated quickly. Police chased the car for
about twenty minutes with their lights and sirens on. The
car ran stop signs going about 70 miles per hour in 30–
mile–per–hour zones, ran into cars on the highway, jumped
medians, and reached speeds of about 115 or 125 miles per
hour. During the chase, the driver of the Jeep turned the car's
headlights off. The Jeep spun out trying to turn and drove

down the wrong side of the road into oncoming traffic. It also rammed a police patrol car while an officer was inside.

The Jeep hit a mailbox in front of a house and came to a stop. Haney exited the car from the passenger's side and started running. Appellant exited from the driver's side soon after and also started running. Both were eventually caught and arrested. Haney identified Appellant as the male passenger with her in the Jeep on July 17. She admitted that Appellant had a shotgun in the car and that it had "gone off" while she was being pursued by Graves.

**\*2** Appellant was charged by indictment for evading arrest or detention with a vehicle, assault on a public servant with a vehicle, assault on a public servant with a shotgun, and deadly conduct. A jury found him guilty on all four counts. The trial court sentenced him to twenty, forty-five, forty-five, and twenty years' confinement, respectively, to run concurrently.

#### Discussion

Appellant presents three issues on appeal. In his first issue, he argues that the trial court erred by granting the State's motion to consolidate. Before trial, the State filed a motion to consolidate the four indictments, arguing that the two offenses that occurred on July 17 and the two that occurred on July 18 arose out of the same criminal episode and were the repeated commission of similar offenses against peace officers. The trial court granted the motion over Appellant's objections. In its brief, the State concedes error but contends that such error was harmless. *See* Tex. Pen.Code Ann. § 3.04 (West 2011) ("Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses."). However, because of our disposition of issue two, we need not conduct a harm analysis on Appellant's first issue. *See* Tex.R.App. P. 47.1.

In his second issue, Appellant argues that the trial court erred by failing to instruct the jury on the accomplice-witness rule. He argues that the only evidence linking him to the two indictments for July 17 was Haney's testimony. Haney, he contends, was an accomplice to those crimes.

Article 38.14 of the code of criminal procedure provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration

is not sufficient if it merely shows the commission of the offense." Tex.Crim. Proc.Code Ann. art. 38.14 (West 2005). An accomplice witness is one who could be prosecuted for the same offense with which the accused is charged. *See Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Crim.App.1987). When there is a question from the evidence whether a witness is an accomplice witness, it is proper to submit that fact issue to the jury. *Id.* at 322.

In reviewing a trial court's failure to instruct the jury on the accomplice-witness rule, we examine the record for evidence corroborating the accomplice-witness testimony. *Jones v. State,* 195 S.W.3d 279, 289 (Tex.App.—Fort Worth 2006), *aff'd,* 235 S.W.3d 783 (Tex.Crim.App.2007). When considering whether there is sufficient evidence to corroborate the testimony of an accomplice, we eliminate that testimony from our consideration and examine the record to ascertain whether the remaining evidence tends to connect the defendant to the offense. *McDuff v. State,* 939 S.W.2d 607, 612 (Tex.Crim.App.1997). The corroborating evidence need not directly connect the defendant to the crime or be sufficient by itself to establish guilt, but it must do more than merely show the commission of the offense. *Cathey v. State,* 992 S.W.2d 460, 462 (Tex.Crim.App.1999).

Because Appellant did not object to the omission of the instruction, we must decide whether the error was so egregious and created such harm that he did not have a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). Under the egregious harm standard, the omission of an accomplice-witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Jones,* 195 S.W.3d at 290 (quoting *Herron v. State,* 86 S.W.3d 621, 632 (Tex.Crim.App.2002)). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996).

**\*3** For the acts of July 17, Appellant was charged with aggravated assault and deadly conduct. Haney was charged with evading arrest or detention in a vehicle for driving the Jeep. But she could have been charged as a party to Appellant's acts if, with intent to promote or assist the commission of the offense, she solicited, encouraged, directed, aided, or attempted to aid Appellant's commission of the offense. *See* Tex. Penal Code Ann. § 7.02(a)(2) (West 2011).

The State contends that the present case is similar to *Hall v. State,* No. 14–13–00742–CR, 2014 WL 6085585 (Tex.App.—Houston [14th Dist.] Nov. 13, 2014, pet. ref'd) (mem. op., not designated for publication). In *Hall,* the appellant was found guilty of aggravated assault against a public servant for shooting a gun from a car. *Id.* at *1. Two witnesses who were in the car with the appellant testified at trial. *Id.* One testified that he had tried to stop the car when the police officer tried to initiate a traffic stop. *Id.* at *3. The other testified that she had hit the back of the gun to prevent the appellant from shooting it. *Id.* The appellate court held that the appellant was not entitled to an accomplice-witness instruction because neither witness "took any affirmative act to assist in shooting [the officer]." *Id.*

In this case, Haney did not stop when Officer Graves attempted a traffic stop. She kept driving at a high rate of speed and continued to do so after she heard the gun go off. She testified that the high speed chase was "pretty long" and that the gun went off in "the middle of it." This evidence raises at least a fact issue as to whether Haney intended to promote or assist Appellant's commission of the offense. Whether Haney had the requisite intent was a question of fact for the jury to decide. *See Smith v. State,* 965 S.W.2d 509, 518 (Tex.Crim.App.1998). Because the jury could have determined that Haney was an accomplice as a matter of fact, the trial court erred by not submitting the question and the accomplice-witness instruction to the jury. *See Biera v. State,* 280 S.W.3d 388, 393 (Tex.App.—Amarillo 2008, pet. ref'd).

We must now consider whether the error caused egregious harm. *Jones,* 195 S.W.3d at 290. The record reveals no other direct evidence tending to show that Appellant was in the Jeep on July 17 with Haney. Rick Horton testified that Appellant, Haney, and Garrett went to Horton's house early on July 17 to get the rearview mirror fixed on the Jeep. All three left together around 6:00 a.m., two hours before Graves attempted to stop the car. Horton stated that the Jeep belonged to Garrett, and Graves testified that the warrant hit on the Jeep had returned for Garrett. Graves also testified that the man in the Jeep wore a hat and sunglasses, and he did not make an in-court identification of Appellant.

At trial, the State presented the events of July 17 and July 18 as part of the same criminal episode. *See Hutch,* 922 S.W.2d at 171 (stating that in the egregious-harm analysis, we consider the charge, the evidence, arguments of counsel, and any other relevant information revealed by the trial record as a whole). Because there was no other evidence besides Haney's testimony to link Appellant to the July 17 events, we believe that the error was such that it "affect[ed] 'the very basis of the case,' deprive[d] the defendant of a 'valuable right,' or 'vitally affect[ed] a defensive theory.' " *Olivas v. State,* 202 S.W.3d 137, 144 (Tex.Crim.App.2006) (quoting *Hutch,* 922 S.W.2d at 171; *Almanza,* 686 S.W.2d at 172) (defining egregious harm). In all likelihood, the jury's deliberations on each indictment were influenced by the evidence supporting the others. *Llamas v. State,* 12 S.W.3d 469, 471–72 (Tex.Crim.App.2000) (noting that trying multiple indictments at the same time raises "two legitimate concerns: (1) that the jury may convict a 'bad man' who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged") (citing 2 Wayne R. LaFave, Israel & King, *Criminal Procedure Criminal Practice Series,* 17.1(d) (2nd ed. Supp.1999)). The harm caused by the lack of the accomplice-witness instruction or evidence corroborating Haney's testimony permeated the entire trial. *See Wedlow v. State,* 807 S.W.2d 847, 852 (Tex.App.—Dallas 1991, no pet.)(holding that harmful error "tainted the 'integrity of the process' " of entire trial). Appellant was therefore egregiously harmed in all four indictments. We sustain Appellant's second issue. Because our conclusion regarding Appellant's second issue requires reversal of the trial court's judgment, we need not address his third issue concerning improper jury argument. *See*Tex.R.App. P. 47.1.

### Conclusion

**\*4** Having sustained Appellant's second issue, we reverse the trial court's judgment and remand the case for a new trial.

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.